Filed 9/25/20  P. v. Meeker CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DONNA MEEKER,<br><br>    Defendant and Appellant. | A157693<br><br>(Napa County<br>Super. Ct. No. 18CR000122) |

A jury convicted Donna Meeker of identity theft in violation of Penal Code[1] section 530.5, subdivision (c)(2).  Meeker contends the evidence was insufficient to support her conviction.  Because there was no evidence that Meeker had the requisite intent to defraud, we reverse.

## BACKGROUND

In January 2018, Deputy Sheriff Gary Donaldson of the Napa County Sheriff's Office was on patrol in an industrial area when he saw a silver 2001 Nissan Maxima parked in a no parking zone.  The car had no license plates, but there were temporary DMV tags common for recently purchased vehicles inside the front windshield.  He ran the car's VIN and learned its registration had expired but a new one was pending for a Donna Meeker.  Deputy

---

[1] All statutory references are to the Penal Code unless stated otherwise.

1

Donaldson knew of homeless camps nearby, so he surveyed the area in an attempt to find Meeker.

He saw a woman and man walking toward the direction of the car. The woman had a "clear plastic baggy in her right hand" containing a "white substance." Deputy Donaldson saw her tuck the baggy into the "front crotch area of her pants" before she got to the car. Based on his training and experience, he believed she was attempting to conceal drugs.

Deputy Donaldson returned to the Nissan to talk to the couple. The woman was Meeker. She had the keys to the Nissan and told him it was hers. When the deputy confronted Meeker about his suspicion that she was concealing drugs, Meeker removed the baggy from her pants and gave it to him. He arrested her. Meeker was on probation at the time.

Sergeant Jon Thompson of the Napa County Sheriff's Office helped with the investigation. When he was searching the car, he opened the fuel compartment door. Inside was a paper towel wrapped around a dishwashing sponge and a California ID. The ID belonged to someone named Victoria W. He gave the ID to Deputy Donaldson.

In a jailhouse interview, Meeker acknowledged the baggy she gave to Deputy Donaldson contained what she assumed was methamphetamine. When Deputy Donaldson asked her about Victoria W.'s ID, Meeker responded, "ID?" So, he told her there was an ID in the fuel door, and Meeker said, "Oh, I don't nothin' about that." (*Sic.*) Meeker said she purchased the car in San Francisco approximately a week earlier and had it towed to Vallejo, where it was parked outside of a mobile home park for a little while. She was in the process of getting the car registered and insured. She had yet to gas up the car because the tank was full when she received it.

Meeker was charged with the unlawful possession of identifying information of another person after having been convicted of a previous violation of section 530.5 (§ 530.5, subd. (c)(2); count one) and possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a); count two.)

At trial, Meeker stipulated that she was convicted in 2010 of violating section 530.5, subdivision (a), also an identity theft crime.

Victoria W., whose ID was found in the Nissan, testified that her 2012 Ford Focus was stolen while she was living in San Francisco. She could not remember exactly when her Ford was stolen but estimated it was sometime between May and June in 2017 or 2018. Her California ID and social security card were in the car at the time. The police recovered her Ford after it was in an accident, but Victoria never learned who had stolen it. Nor did Victoria ever retrieve the car or her ID. When she finally made it to the tow yard where the Ford was impounded, she learned it had been moved somewhere "out of town." She had no idea what happened to her car or her belongings that were in it. Victoria did not recognize or know Meeker. She had not given anyone permission to have her ID. She was unaware of any fraudulent activity under her name or personal information but would not know how to check on such matters.

In addition to testifying about the details of his encounter with Meeker, Deputy Donaldson testified about the scope of his follow-up investigation related to the charges. He never checked the gas level in the Nissan, nor did he find a social security card belonging to Victoria W. He was never able to reach Victoria W. and thus discovered no information that her ID was ever used for any fraudulent purpose. The ID was never fingerprinted or swabbed for DNA. Deputy Donaldson also acknowledged he never saw Meeker with physical possession of the card and had no information on how or why the ID

3

came to be lodged in the fuel door.  He never asked Meeker's companion about the ID or whether anyone else had access to the vehicle.

Sergeant Thompson, who testified about finding the ID in the fuel door, also had no idea how or why it was placed there.  He stated, "[M]y only guess is somebody put it there so people wouldn't find it, like the police."

The jury found Meeker guilty of both counts.  Over the People's objection, the court reduced the felony conviction on count one to a misdemeanor violation of section 530.5, subdivision (c)(1).  Meeker was ordered to serve eight days in county jail with four days conduct credit for the section 530.5 violation, a term which ran consecutively to a term imposed in another case.  This appeal followed.

## DISCUSSION

### A.    Sufficiency of the Evidence

Meeker argues the evidence was insufficient to support her conviction for identity theft.  We agree.

In a challenge to the sufficiency of the evidence supporting a criminal conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value—from which any reasonable jury or trier of fact could have found that the prosecution proved the defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576–578.)  In determining whether substantial evidence supports the conviction, we presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment.  (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)  We apply the same standard of review when the prosecution relies on circumstantial evidence.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  "Substantial evidence includes circumstantial

evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.)

But substantial evidence must reasonably inspire confidence and be of solid value; it cannot be based on speculation or "a mere possibility . . . ." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.) Substantial evidence is not synonymous with any evidence. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681, fn. 3.) " 'In any given case, one "may *speculate* about any number of scenarios that may have occurred. . . . A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002.) Substantial evidence must be capable of supporting a finding, beyond a reasonable doubt, of every fact required for the conviction. (*Ibid.*)

To be convicted under section 530.5, subdivision (c)(2), a person must "acquire[] or retain[] possession of . . . personal identifying information" of another person "with the intent to defraud." (§ 530.5, subd. (c)(2).)[2]

Here, there was sufficient evidence to support the jury's finding that Meeker possessed Victoria W.'s ID. "Actual or constructive possession is the right to exercise dominion and control over the contraband or the right to exercise dominion and control over the place where it is found." (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) Meeker had the requisite control over Victoria W.'s ID. The sheriff found it inside the Nissan's fuel door.

---

[2] A violation of this section also requires the defendant to have a prior conviction for violating section 530.5. (§ 530.5, subd. (c)(2).) Meeker stipulated to her prior section 530.5 conviction, so we do not address this.

5

Meeker had the keys to the car, said she had recently purchased it, and acknowledged owning it. DMV records showed the car's registration was pending in her name. This evidence was sufficient to support the jury's finding that Meeker possessed someone else's ID.

But the evidence was not sufficient to support the jury's finding that Meeker had the intent to defraud anyone. An intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment or suppression of the truth or by any artifice or act designed to deceive. (*People v. Booth* (1996) 48 Cal.App.4th 1247, 1253.) "The intent to defraud can be inferred from all the facts and need not be proved by direct evidence." (*People v. Hambleton* (1963) 218 Cal.App.2d 479, 482.) It is "often proven by circumstantial evidence; it is thus typically inferred from all of the facts and circumstances." (*People v. Bollaert* (2016) 248 Cal.App.4th 699, 715.)

If anything, the evidence of Meeker's intent was circumstantial. There was no direct evidence Meeker intended to use Victoria W.'s ID to commit a fraud. When Deputy Donaldson asked her about the ID, Meeker was surprised and told him she knew nothing about it. There is nothing else in this record that demonstrates Meeker had any intention of using the ID for any purpose. The circumstantial evidence was insufficient to prove Meeker's fraudulent intent. Even though the ID was lodged in the fuel door of Meeker's car, there was no evidence she knew it was there. No one had seen her with the ID, and there was no evidence she hid it there or ever physically touched it. Moreover, the ID was concealed in an older model car Meeker purchased about a week earlier. The car had been towed from San Francisco

6

and sat out outside a mobile home park, and there was no indication Meeker ever had exclusive access to it in either place.  Meeker said she had never put gas in the car, and there was no evidence to contradict her.  None of this evidence showed Meeker knew Victoria W.'s ID was in the car.  In the circumstances, Meeker's mere possession of the car and ID were not enough to also establish that she possessed the ID with fraudulent intent.

The People argue the jury could reasonably infer Meeker's knowledge "simply from the fact that the ID card was under the gas cap in the car that [she] had owned for 11 days."  We disagree.  Knowledge about the ID could not reasonably be inferred solely from her possession of a car to which she did not have exclusive access.  (See, e.g., *People v. Van Syoc* (1969) 269 Cal.App.2d 370, 372–373 [mere ownership of an unlocked car parked in a public area in which marijuana was found and to which the owner had non-exclusive access was not sufficient to establish owner possessed the drug with knowledge of its presence].)  Based on the whole record, an inference that Meeker must have known about the ID because she owned the car was unreasonable because she had only owned it for a week during which time there was no evidence she ever filled the car with gas or touched the fuel door.  Even during Meeker's brief ownership, the car was parked outside a mobile home park and the fuel door was neither locked nor secured.  It was *possible* Meeker knew about the ID but such speculation does not reasonably support the jury's finding of intent.

*People v. Truong* (2017) 10 Cal.App.5th 551 does not compel a different result.  Truong was convicted of multiple counts in part for possessing credit cards belonging to her neighbor.  (*Id.* at pp. 553–555.)  She argued the prosecution failed to establish any intent to defraud under section 530.5, subdivision (c).  (*Id.* at p. 558.)  Based on the circumstances surrounding

7

Truong's possession of the credit cards, the court concluded the jury could reasonably have inferred her intent. (*Ibid.*) Truong had returned certain mail belonging to the neighbor that had been misdelivered to Truong's residence, but not the credit cards. (*Ibid.*) The police found them unsealed and without their accompanying paperwork secreted in a drawer in Truong's bedroom months after the neighbor reported them missing. (*Ibid.*) Truong also made contradictory statements to police about how she came into possession of the credit cards and what she intended to do with them. (*Ibid.*) The court found evidence of her intent "overwhelming." (*Id.* at p. 559.) Here, the evidence of Meeker's intent is absent. The ID was not found in a place that could be accessed only by Meeker, and her responses to questions about the ID and car were consistent and uncontroverted. The jury's finding was based solely on Meeker's possession, which the *Truong* court acknowledged "alone does not establish an intent to defraud . . . ." (*Id.* at p. 558.)

## B.    Instructional Error

Meeker also argues the court erred by failing to sua sponte instruct jurors that she must have had knowledge about the presence of the ID in the Nissan to be guilty of section 530.5, subdivision (c)(2). Since this issue may arise upon a potential retrial, we address it briefly.

"We review instructional error claims de novo." (*In re Loza* (2018) 27 Cal.App.5th 797, 800.) " 'Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." ' [Citation.] The trial court 'has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested.' [Citation.] Generally, 'it is enough for the court to instruct [on the elements of a crime] in the language of the statute when the

8

defendant fails to request an amplification thereof.' [Citation.] 'Even if such an instruction "cannot be commended as a full or clear exposition of the meaning of the section of the code, still it cannot be said that it was error for the court in giving the law to have conformed to the language of the code, and to have omitted what that code itself omits." ' " (*People v. Turner* (2019) 37 Cal.App.5th 882, 887–888.)

The trial court instructed the jury on section 530.5 with CALCRIM No. 2041, which states: "The defendant is charged in Count One with the fraudulent possession of personal identifying information with a prior conviction under Penal Code Section 530.5 in violation of Penal Code section 530.5(c)(2). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant acquired or kept the personal identifying information of another person; [¶] 2. The defendant did so with the intent to defraud another person; [¶] AND [¶] 3. The defendant has a prior conviction for Identity Theft (Penal Code Section 530.5(a). [¶] A person intends to *defraud* if he or she intends to deceive another person in order to cause a loss of something of value, or to cause damage to a legal, financial, or property right." The instruction then provides a definition of personal identifying information. It concludes, "It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts."

CALCRIM No. 2041 adequately explains the requisite law. Meeker has not cited nor have we found any authority which holds that knowledge is a distinct element of a violation of section 530.5, subdivision (c) requiring a separate instruction. Further, the instruction on intent, which the court explained was an "inten[t] . . . to deceive another person in order to cause a loss of something or value, or to cause damage to a legal, financial, or

9

property right," made a separate express instruction on knowledge unnecessary. Since one cannot have the specific intent to defraud without knowledge of the contraband ID used to perpetrate the fraud, such a modification to CALCRIM No. 2041 would have been superfluous. The instruction given was not in error.

## DISPOSITION

The judgment is reversed and the case remanded.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*People v. Meeker*, A157963

11